Randy Glenn **NELSON**, Respondent,

v.

Carol Russell **FISCHER**, Director of Revenue, Appellant.

No. WD 65426.

Missouri Court of Appeals, Western District.

March 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2006.

Application for Transfer Denied May 30, 2006.

Cheryl Ayn Caponegro Nield, Associate Solicitor, Jefferson City, MO, for appellant.

George S. Miller, Maryville, MO, for respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

This is an appeal from a reinstatement of driving privileges. The Director of Revenue appeals the trial court's order reversing the Director's suspension of Randy Glenn Nelson's driving privileges. The Director contends that the trial court misapplied the law. We reverse the judgment reinstating Nelson's driving privileges.

## Background

On July 9, 2004, Sergeant Justin Ballantyne responded to a call from the manager of a restaurant in Maryville informing the police that two men were passed out in a van in the restaurant parking lot. The call was made at 6:45 a.m. The restaurant manager had tried to rouse the driver to

move the van, but the driver went back to sleep.

When Sgt. Ballantyne responded, he found two men sleeping in the van, which was parked across two parking spaces in the lot. The motor of the van was running. Although it was not raining, the windshield wiper blades were on. The wiper blades had partially melted, leaving a black streak across the windshield. It had rained earlier but had not been raining for a while. Randy Nelson, to whom the van was registered, was asleep in the driver's seat. Nelson's foot was on the dash.

Sgt. Ballantyne attempted to awake Nelson by knocking on the window. The knocking did not rouse Nelson. Sgt. Ballantyne then opened the van door and shook Nelson to awaken him. After doing so, Sgt. Ballantyne asked Nelson to turn off the vehicle. Nelson first tried to turn off the wipers, but turned the lights on and off instead; finally he turned off the ignition, which stopped the wiper blades. The van was in park the entire time.

Inside the van there were two partially consumed beer bottles between the passenger and driver. Also, there was a strong odor of intoxicants in the vehicle and on Nelson's breath. Nelson's eyes were watery, bloodshot, and glassy. Sgt. Ballantyne observed that Nelson's mumbling speech was slurred and confused.

Sgt. Ballantyne administered a horizontal gaze nystagmus test to Nelson. He lacked smooth pursuit, had distinct nystagmus at maximum deviation, and onset of nystagmus at approximately forty-five degrees. Nelson also performed poorly on the fingertip count test. Nelson refused to perform other standard sobriety tests,

claiming he had undergone a metal hip replacement. He did not make this same claim when booked at the sheriff's office.

Nelson was arrested for driving while intoxicated. He submitted to a breath test that revealed a blood alcohol concentration of .122% by weight. Sgt. Ballantyne served Nelson a "Notice of Suspension/Revocation of Your Driving Privilege" on behalf of the Director of Revenue, pursuant to section 302.520.[1] Nelson had an administrative hearing for his suspension in August 2004. The administrative hearing officer sustained the suspension.

Nelson filed his petition for trial de novo pursuant to section 302.535. The case was tried on March 7, 2005. At trial, Sergeant Wayne Wilson of the Maryville Department of Public Safety was the only live witness to testify. Sgt. Wilson is a Type II maintenance officer for the department and maintains the breath test instrument used by the department. Sgt. Wilson's testimony described the maintenance he performed on the instruments used to test Nelson. Also, Sgt. Wilson's records of the tests were admitted. The remaining evidence admitted consisted of the police reports related to the arrest. Nelson waived rebuttal.

The trial court's judgment setting aside and reversing the suspension of Nelson's driving privilege was filed on April 7, 2005. The Director appeals.

### Standard of Review

■ We will sustain the trial court's judgment "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Car-*

---

**1.** All statutory references are to the Revised Statutes of Missouri, Supplement 2003, unless otherwise indicated.

*ron*, 536 S.W.2d 30, 32 (Mo. banc 1976). When the evidence is uncontroverted and the real issue concerns its legal effect, this court need not defer to the trial court's judgment. *Hinnah v. Dir. of Revenue*, 77 S.W.3d 616, 620 (Mo. banc 2002).

### Analysis

■ The Director of Revenue's only point on appeal is that the trial court erred in reinstating Nelson's driving privilege because the evidence showed the arresting officer had probable cause to believe that Nelson was driving in violation of alcohol-related offenses. The Director argues that the evidence was sufficient because it showed Nelson was behind the wheel of his van; the vehicle was running; he manipulated the mechanisms of the van; and his blood alcohol level was .122% by weight.

Section 302.505 states as follows:

1. The department shall suspend or revoke the license of any person upon its determination that the person was arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500. . . .

2. The department shall make a determination of these facts on the basis of the report of a law enforcement officer required in section 302.510, and this determination shall be final unless a hearing is requested and held. If a hearing is held, the department shall review the matter and make a final determination on the basis of evidence received at the hearing.

\* \* \*

■ The Director of Revenue shall suspend or revoke a driver's license if the arresting officer has probable cause to believe that the person was driving the vehicle with a blood alcohol concentration of at least eight-tenths (.08) of one percent. § 302.505. The driver, after the department determination, may seek judicial review of the determination. § 302.535.

Applying this statutory scheme, the director must initially present evidence to establish probable cause for the arrest and the driver's blood alcohol level of .08% or greater. This evidence creates a presumption that the driver was intoxicated. The driver is then entitled to rebut the director's prima facie case with evidence that his blood alcohol content did not exceed the legal limit. Ultimately, the circuit court must determine whether the director has met the burden of proving by a preponderance of the evidence that the driver drove while legally intoxicated.

*Walker v. Dir. of Revenue*, 137 S.W.3d 444, 446 (Mo. banc 2004) (*quoting Verdoorn v. Dir. of Revenue*, 119 S.W.3d 543, 545 (Mo. banc 2003)).

■ Here, at the hearing, Nelson's intoxication was established. The issue before this court is not whether the evidence showed that Nelson was intoxicated, but rather whether the evidence showed he was driving or operating the van while intoxicated. Proof beyond a reasonable doubt is not necessary. *Miller v. Dir. of Revenue*, 719 S.W.2d 787, 789 (Mo. banc 1986). "[T]he Director bears a lesser burden under the statute—a preponderance of the evidence." *Id.*

To determine whether the evidence showed Nelson was driving or operating the van, this court is bound by the Supreme Court's decision in *Cox v. Director of Revenue*, 98 S.W.3d 548 (Mo. banc 2003). In that case, a police officer discovered Cox sleeping or unconscious, sitting in the driver's seat behind the wheel of a

vehicle. *Id.* at 549. The keys were in the ignition, the motor was running, and the vehicle was in park. *Id.* Cox was the only person in or around the vehicle. *Id.* The officer awoke Cox. *Id.* When Cox opened his window, the officer smelled an intoxicating beverage on his breath. *Id.* Cox's eyes were bloodshot and watery, and he appeared disoriented. *Id.* There was a glass of brown liquid between Cox's legs. *Id.* When asked by the officer, Cox turned off the ignition, exited the vehicle, and tried but failed sobriety tests. *Id.* Cox was arrested for driving while intoxicated. *Id.* After receiving *Miranda* warnings, Cox acknowledged he was operating the vehicle. *Id.* When given a breath test, Cox's blood alcohol content was .18 of one percent. *Id.*

The Supreme Court went on to analyze an amendment to section 302.505 and concluded that the terms "driving" and "operating" have distinct meanings which are not further defined. *Id.* at 550. As a result, the terms are given the plain and ordinary meaning from the dictionary. *Id.* The court defined "operate" as meaning " 'to cause to function usually by direct personal effort: work (a car).' " *Id.* (*quoting* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (1993)). The court went on to say that "Cox meets the bright-line test to operate a car, as he caused its motor to function. Once the key is in the ignition, and the engine is running, an officer may have probable cause to believe that the person sitting behind the steering wheel is operating the vehicle." *Id.*

In the present case, it is undisputed that Nelson was sitting behind the steering wheel when Sgt. Ballentyne arrived. The car was in a restaurant parking lot. The engine and windshield wipers were running. Nelson was the owner of the van as well as the person in the driver's seat. As a result, the officer had probable cause to believe that Nelson was operating the van as well as probable cause to believe he was intoxicated. The Director established a *prima facie* case. *Walker,* 137 S.W.3d at 447.

Nelson presented nothing to rebut the Director's evidence. The Director is required to prove her case only by a preponderance of the evidence. *Miller,* 719 S.W.2d at 789. When the evidence amounting to a *prima facie* case is unrebutted, the record will not support a finding in favor of the driver. *Reinert v. Dir. of Revenue,* 894 S.W.2d 162, 164 (Mo. banc 1995); *Verdoorn,* 119 S.W.3d at 546 (where issue was validity of test results, the Court said the rebuttal evidence must raise a genuine issue of fact to rebut the *prima facie* case). *See also Strode v. Dir. of Revenue,* 724 S.W.2d 245, 248 (Mo. banc 1987) (where there was a valid arrest and a *prima facie* case without rebuttal, the court reversed the trial court's order of reinstatement without remand). Accordingly, we conclude that when the Director has made a *prima facie* case, and the driver has waived rebuttal, the trial court must rule that the Director's case was shown by a preponderance of the evidence. *See Verdoorn,* 119 S.W.3d at 546 (rebuttal evidence must raise a genuine issue of fact).

Nelson relies on the "rule relating to circumstantial evidence" citing *State v. Franco,* 544 S.W.2d 533 (Mo. banc 1976), and argues that because there is a chance that someone else turned on the car, such as the passenger, and because there are other potential hypotheses consistent with innocence, this court must affirm the trial court ruling. The proposition he cites is applicable in criminal cases. This is a civil case. *Cox* is controlling. A slight difference in the facts will frequently occur in different cases dealing with a probable cause analysis. That does not change the

fact that here there was probable cause; and it does not change the fact that *Cox* governs this case. The Director properly suspended Nelson's license. *Cox*, 98 S.W.3d at 551. The circuit court erroneously declared and applied the law. *Id.* (*citing Murphy*, 536 S.W.2d at 32).

## Conclusion

The judgment of the trial court is reversed.

ULRICH and HARDWICK, JJ., concur.