**Eric S. LEWIS, Appellant,**

v.

**Janette M. LOHMAN, Director of Revenue, Respondent.**

**No. WD 51707.**

Missouri Court of Appeals, Western District.

Dec. 17, 1996.

---

Daniel H. Miller, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Rodney P. Massman, Special Assistant Attorney General, Mo. Dept. of Revenue, Jefferson City, for respondent.

Before ULRICH, P.J., and HANNA and SMART, JJ.

ULRICH, Presiding Judge.

Eric Lewis appeals the order of the trial court upholding the suspension of his driver's license by the Director of Revenue under the administrative suspension and revocation provisions of sections 302.500—.541, RSMo 1994. He claims that the Director did not satisfy her burden under section 302.505, RSMo 1994, which provides for the suspension or revocation of the driver's license of a person arrested on probable cause to believe that the person was operating a motor vehicle with a blood alcohol concentration of .10% or more by weight. He contends that the evidence at trial was insufficient to prove (1) the arresting officer had probable cause to arrest him for driving while intoxicated, and (2) his blood alcohol content was .10% or more by weight. The judgment of the trial court is affirmed.

At approximately 1:20 a.m., on January 10, 1995, Officer Steve Brown, a police officer for

the City of Columbia, Missouri, stopped an automobile driven by Eric Lewis for speeding. Talking with Mr. Lewis, Officer Brown observed that Mr. Lewis' eyes were bloodshot and glassy, and the officer detected the odor of alcohol on his breath. Mr. Lewis admitted that he had drunk several beers that night. Officer Brown then administered three field sobriety tests: the walk and turn test, the balance test, and the eye test. Following the tests, Officer Brown arrested Mr. Lewis for driving while intoxicated. At the police station, Officer Brown administered a breath test to Mr. Lewis using an Intoxilyzer 5000 breath analyzer. The breath test revealed that Mr. Lewis' blood alcohol content was .10%.

Mr. Lewis' driving privileges were suspended by the Director of Revenue pursuant to sections 302.500–.541, RSMo 1994. An administrative hearing was conducted, and the suspension was upheld. A trial de novo was held on August 28, 1995, and the trial court entered an order affirming the suspension on September 18, 1995. This appeal followed.

On appeal, Mr. Lewis claims that the trial court erred in upholding the Director's suspension of his driver's license because the Director did not satisfy her burden under section 302.505, RSMo 1994. He contends that the evidence at trial was insufficient to prove (1) Officer Brown had probable cause to arrest him for driving while intoxicated and (2) his blood alcohol content was .10% or more by weight.

## STANDARD OF REVIEW

■ The judgment of the trial court must be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously applies the law, or it erroneously declares the law. *Chinnery v. Director of Revenue*, 885 S.W.2d 50, 51 (Mo.App.1994). In a license revocation proceeding, the Director has the burden to show, by a preponderance of the evidence, that the police had probable cause to arrest the petitioner for driving while intoxicated and that the petitioner's blood alcohol content was at least .10% at the time of arrest. *Id.;* § 302.505, RSMo 1994.

## 1. PROBABLE CAUSE TO ARREST

Mr. Lewis first argues that the trial court's finding that Officer Brown had probable cause to arrest him for driving while intoxicated was against the weight of the evidence. He claims that given the absence of erratic driving, staggering, or other conduct more consistent with intoxication, Officer Brown could not have reasonably believed that he was driving while intoxicated.

■ Probable cause exists when the facts and circumstances would warrant a person of reasonable caution to believe that an offense has been or is being committed. *Chinnery*, 885 S.W.2d at 51. Probable cause is evaluated in relation to the circumstances as they would have appeared to a prudent, cautious, and trained police officer at the time of the arrest. *Id.* In examining the existence of probable cause, courts consider the information possessed by the officer before the arrest and the reasonable inferences drawn therefrom. *Wilcox v. Director of Revenue*, 842 S.W.2d 240, 243 (Mo.App.1992).

■ Mr. Lewis was stopped for speeding. His eyes were bloodshot and glassy, and his breath smelled of alcohol. He admitted to Officer Brown that he had consumed a few beers that night. Furthermore, his performance on three field sobriety tests administered by the police officer was poor. During the walk and turn test, Mr. Lewis missed the heel-to-toe three times and staggered twice. He wobbled back and forth during the balancing test, and he did not maintain a smooth pursuit with his eyes during the eye test. This evidence was sufficient to establish probable cause to make the arrest for driving while intoxicated. *See Stewart v. Director of Revenue*, 702 S.W.2d 472, 476 (Mo. banc 1986).

## 2. BLOOD ALCOHOL CONTENT

Mr. Lewis next claims that the trial court's finding that his blood alcohol content was .10% or more was not supported by substantial and competent evidence. He contends that because the breath analyzer had a tolerance of .005%, his blood alcohol content may have been as low as .095%.

The Director argues that Mr. Lewis failed to preserve the issue of admissibility of his blood alcohol content for appellate review. She claims that Mr. Lewis did not make a proper and timely objection to the evidence when it was offered at trial. Mr. Lewis, however, is not challenging the admission of test results. Instead, he is arguing that the results did not provide sufficient evidence that his blood alcohol content was .10% at the time of his arrest. The issue is, therefore, reviewable.

Breathalyzer test results are essential to establish a prima facie case under section 302.505, RSMo 1994. *Thomas v. Director of Revenue,* 875 S.W.2d 582, 583 (Mo. App.1994). Courts generally accept the breathalyzer machine as a reliable device for the measurement of blood alcohol content. *State v. Schollmeyer,* 741 S.W.2d 690, 691 (Mo.App.1987). Regulations promulgated by the Department of Health provide the methods and standards by which a breathalyzer test must be performed and the qualification requirements of the person administering the test to insure that the tests are accurate and reliable. 19 CSR 20–30.060 (1996); *Young v. Director of Revenue,* 835 S.W.2d 332, 334 (Mo.App.1992). The regulations also provide a list of approved equipment and devises and maintenance procedures for the individual machines. 19 CSR 20–30.050 (1996).

Officer Chester Heyer, a police officer for the City of Columbia, testified at trial regarding the Intoxilyzer 5000 breath analyzer used to determine Mr. Lewis' blood alcohol content. He explained that he performed a maintenance check on the machine 17 days before Mr. Lewis' arrest and that the machine was in good working order. He acknowledged that the particular model had a tolerance or margin of error of .005% and that the breathalyzer tested within the tolerance. Officer Heyer explained that his test of a .10% solution produced readings of .095, .096, and .095 which was "on the low side."

Officer Brown, who actually administered the breath test to Mr. Lewis, testified that he held a valid permit to operate the breathalyzer, he observed Mr. Lewis for 15 minutes prior to giving the test, and he completed the required operational checklist at the time of the test as required by the regulations. He further stated that the machine was functioning properly at the time of the test.

The record reveals that Mr. Lewis' breath test was performed on a devise and according to the techniques and methods approved by the Department of Health. The machine was operating within the allowed tolerance for that model when it produced the result of .10% blood alcohol content. Section 302.505, RSMo 1994, requires that a person's blood alcohol content be .10% or more to suspend or revoke the person's license for driving while intoxicated. It does not require the test result to pass the threshold alcohol limit of .10% within the .005% margin of error. The machine's tolerance or established deviation favored Mr. Lewis because the machine's margin of error was "on the low side." The evidence, therefore, was sufficient to support the trial court's finding that breath test reliably showed Mr. Lewis' blood alcohol content was .10% or more by weight.

The judgment of the trial court is affirmed.

All concur.